Filed 4/13/15  In re R.J. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re R.J. et al., | B257918 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. DK05258) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MICHELLE O., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Michelle O. (Mother) appeals from an order declaring her three children, five-year-old R.J., one-year-old M.S., and newborn Agustin S., dependent children of the court pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] removing them from her custody and placing them in the homes of their fathers, Jonathan J. (Father J.) and Agustin S. (Father S.).[2] The section 300 petition was filed after Mother and Agustin tested positive for amphetamines at the time of Agustin's birth, with subsequent confirmation that Mother and Agustin also tested positive for methamphetamine. Mother contends there was insufficient evidence to support the juvenile court's jurisdiction finding that the children were at risk due to her alleged drug use. She also challenges the disposition order, arguing that the court should not have removed the children from her custody because there was insufficient evidence that a lesser alternative would not have protected the children. Finally, she contends the trial court erred in granting Father J. sole physical custody over R.J., with supervised visitation for Mother, and terminating jurisdiction. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

When Agustin was born in May 2014, both he and Mother tested positive for amphetamines and methamphetamine. Agustin was born full term, had no medical

---

[1] Statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] For purposes of clarity, we will refer to the parents as Mother, Father J. and Father S.

problems, and did not exhibit any withdrawal symptoms. He had APGAR[3] scores of 9 and 9, and he was described as "very calm and [having] a pleasant disposition."

When the children's social worker (CSW) interviewed Mother at the hospital, she denied any drug use. She told the CSW she thought someone might have drugged her, noting that she became violently ill after attending a funeral two or three months earlier. Mother admitted she was around friends who smoked marijuana the prior week. She also told the CSW that she did not have any prenatal care because she only found out that she was pregnant two months before the birth (at the end of March 2014). Mother told the CSW that "she will do whatever it takes to get her children back as soon as possible." The CSW described Mother as "very cooperative" and as being "a very polite and caring person."

At the time of Agustin's birth, Mother was living with Father S. and their one-year-old son M.S. Mother shared custody of five-year-old R.J. with Father J. pursuant to a family court order, under which R.J. lived with Mother and Father J. on alternate weeks. A CSW visited the homes of Father S. and Father J. and found both homes to be clean and organized, with no obvious safety hazards. Both fathers denied seeing Mother use drugs.

Based on the positive drug tests, on May 24, 2014 the Los Angeles County Department of Children and Family Services (DCFS) placed a hospital hold on Agustin, detained all three children and placed them with their fathers.

---

[3]     APGAR refers to a baby's "Appearance, Pulse, Grimace, Activity, Respiration." The test is used to evaluate a newborn's health immediately after birth, with a score from 0 to 10.

On May 29, 2014 DCFS filed a section 300 petition alleging in count b-1 that Agustin[4] was born with a positive toxicology screen for amphetamines,[5] which condition would not exist except as a result of actions by Mother. The petition alleges in count b-2 as to all three children that Mother "is a current abuser of amphetamines, which renders the mother incapable of providing regular care for the children." The petition alleges in both counts that Mother's substance abuse endangers the children's physical health and safety and places them at risk of physical harm and damage.

At the detention hearing on May 29, 2014 the juvenile court found a prima facie case for detention. The court ordered the children released to their fathers. The court allowed Mother to live with Father S., M.S. and Agustin, as long as she was not left alone with the children and did not breastfeed them. In addition, she was ordered to participate in an approved drug program with weekly random drug and alcohol testing. Mother was allowed monitored visitation with all three children.

The jurisdiction/disposition report dated June 26, 2014 notes as to five-year-old R.J. that, according to Father J., since the detention hearing Mother initiated only two visits with him. Mother also did not show up at R.J.'s graduation from kindergarten. The report states R.J. "seems to be thriving in the care of father and father is willing to protect the child from said abuse." DCFS recommended that R.J. be released to Father J., the

---

[4]     In the petition Agustin is described as "Baby Boy" because he had not yet been named.

[5]     The petition alleges in counts b-1 and b-2 that Agustin and Mother tested positive for amphetamines because the initial hospital test results only showed screening for amphetamine. Prior to the jurisdiction and disposition hearings, according to the last minute information for the court, the CSW spoke with a social worker at the hospital who provided verbal confirmation that both Mother and Agustin tested positive for methamphetamine. A lab report for Agustin (identified as "O[.], Michelle Boy") shows that his sample tested positive for amphetamine and methamphetamine. Mother's laboratory result shows a positive "screening" test for amphetamine, but does not show testing results for methamphetamine.

4

court terminate jurisdiction over him with a family law exit order in place, and grant Father J. sole physical custody of R.J, with joint legal custody.

The jurisdiction/disposition report states as to M.S. and Agustin that they had been released to Father S. and that Mother was residing in the home with Father S., M.S. and Agustin. DCFS had attempted to interview Mother and Father S. to assess their compliance with the plan, but neither parent had responded to the attempts. DCFS also had not received the results of any drug testing. DCFS was therefore unable to determine if Mother was in compliance with the detention order.

DCFS recommended that M.S. and Agustin remain released to Father S. and that Father S. participate in parent education and substance abuse awareness classes. DCFS also recommended that Mother be allowed to continue to reside with Father S. and the children "[u]nless it is determined to be an unsafe plan," and as long as she participated in an approved substance abuse treatment program, parent education classes and individual counseling, and submitted to random weekly drug testing. DCFS continued to recommend that Mother not be left alone with the children and not breastfeed the children.

In last minute information for the court, the CSW reported that she met with Mother, Father S., M.S. and Agustin during an unannounced visit on June 17, 2014. She reported, "[t]he children appeared healthy, well cared for and without any signs of abuse or neglect." The CSW questioned Mother about a "no show" drug test on June 5, and Mother insisted that she called the lab on a daily basis, and on that date her letter did not come up when she called in. Mother missed a second drug test on June 11, 2014, and Mother again told the CSW that she had called in but her letter did not come up for testing.

Mother did submit to a test on June 16, but the results were pending. Mother stated she tried marijuana as a teenager but stopped because she did not like how it made her feel. She later started drinking, but she stopped two years earlier, when she was 25. The CSW at this point also confirmed with the hospital that Mother and Agustin had tested positive at the time of Agustin's birth for methamphetamine.

Mother and Father S. told the CSW that the only drug Mother took prior to Agustin's birth was extra strength acetaminophen for pain, but the lab confirmed that even if Mother used a large amount of acetaminophen, this would not cause Mother to test positive for amphetamines. Additionally, Mother had not enrolled in a substance abuse program. Based on the new information, including that Mother had not enrolled in a substance abuse program, had missed two drug tests, and had a confirmed test result for methamphetamine on the day of Agustin's birth, DCFS requested that Mother move out of Father S.'s home immediately.

At the jurisdiction and disposition hearing on June 26, 2014, the juvenile court admitted the DCFS reports into evidence. The court also considered, over DCFS's objection, a log Mother asserted she kept of her daily calls for drug testing that she started on June 14, a graduation certificate for R.J. dated June 5, and a supermarket receipt dated June 5 that showed that Mother had purchased what she contended were supplies for R.J.'s kindergarten graduation party. The parties stipulated that if Mother testified, she would state that she has not used any illicit substances since she was 14 or 15 and that she had called in twice each day, but her letter did not come up for drug testing.

Mother's counsel argued that there was no relationship between the positive tests for amphetamine and risk to the baby. Mother's counsel also argued that the CSW made an unannounced visit to Mother and Father S. and found that the children were well-cared for with no signs of abuse. Mother's counsel further argued that Mother had been calling in regularly but her letter did not come up, and that if Mother had been under the influence of drugs, the kindergarten teacher or a parent would have called the police. Finally, Mother's counsel argued that the acetaminophen came from Mexico, and "there are no other substances that the mother took that could explain a positive amphetamine test."

Counsel for DCFS noted that the hospital drug test showed positive results for both amphetamine and methamphetamine. Minors' counsel[6] expressed concern over the positive tests and lack of any explanation for the tests. Minors' counsel also noted that Mother was ordered not to miss any tests, which condition she violated. Minors' counsel joined in the request that Mother not reside in the home with Father S., M.S. and Agustin "pending some participation in her program and some additional clean tests."

The juvenile court stated that it could not "believe that the system is that broken down that this woman would call, looks like about two weeks in a row, and not be able to get through to the telephone number and get her number . . . when it was being called. So it just is not believable to this court that for that two-week period her letter did not come up. And in fact it did and she missed the test, and we don't have proof that she's clean and sober."

The court sustained the petition under section 300, subdivision (b), declared the children dependents of the court, and found under section 361, subdivision (c), by clear and convincing evidence that "returning the children to the mother would create a substantial risk of detriment to their safety, protection, physical, emotional well-being, and there's no reasonable means to keep the children safe without removing them from the mother." The court ordered the children removed from Mother and released to Father S. and Father J.

As to Agustin and M.S., the juvenile court ordered that Mother was not allowed to live in the home of Father S. or to visit the children in the home. The court ordered visitation for Mother three times a week in a neutral location with a neutral monitor other than Father S. The court gave DCFS discretion to "liberalize" visitation with Agustin and M.S. and to allow Mother to live in the home with Father S. and the children if Mother participates in drug treatment and tests negative.

---

[6] Minors' counsel represented all three children at the hearing.

As to R.J., the juvenile court issued a custody order granting joint legal custody to Mother and Father J., with physical custody to Father J. and primary residence with Father J. The court allowed Mother supervised visitation with R.J. and ordered Mother to complete a drug and alcohol treatment program with random drug testing. Over Mother's objection, the court ordered that R.J. be released to Father J., whom the court described as the "noncustodial parent."[7] The court ordered the case closed as to R.J. and jurisdiction terminated.[8]

## DISCUSSION

### A. *Standard of Review*

We review the juvenile court's jurisdiction and disposition orders by applying the substantial evidence test. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and

---

[7] The juvenile court at the hearing cited to section 361.2 as support for placing R.J. with Father J., describing Father J. as a "noncustodial parent." While Mother points out that this section was inapplicable because Father J. was not a "noncustodial parent," the court had authority to remove R.J. from Mother and place him with Father J. as a "nonoffending parent" under section 361, subdivision (c)(1)(B).

[8] Minute orders from subsequent hearings reveal that DCFS filed a subsequent petition under section 342. We take judicial notice of the petition and subsequent court orders. (Evid. Code, §§ 452, 459; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716; *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390.) On October 1, 2014 the juvenile court ordered Agustin and M.S. removed from Father S.'s home. Father S. was ordered to participate in a drug and alcohol program and testing. The section 342 petition was sustained in part on January 28, 2015. The subsequent history does not affect this appeal because Mother challenges removal of the children from her, not placement with Father S.

8

credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" [Citation.]' [Citation.]" (*In re I.J.*, *supra*, at p. 773; accord, *In re Christopher R.*, *supra*, at p. 1216.) It is the parent's burden on appeal to show the evidence is insufficient. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 138; *In re N.M.* (2011) 197 Cal.App.4th 159, 168.)

Although the burden of proof at the jurisdiction phase is preponderance of the evidence and at the disposition phase is clear and convincing evidence, "we review both jurisdiction findings and the disposition order for substantial evidence." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216, fn. 4; see *In re A.E.* (2014) 228 Cal.App.4th 820, 826.)

**B.** *Governing Statutes and Applicable Law*

Section 300, subdivision (b)(1), provides that a child may be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Section 300 requires that the risk of harm be shown at the time of the jurisdiction hearing. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1023; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) However, as our Supreme Court noted in *In re I.J.*, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently

9

being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' (§ 300.2 . . . .) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

In making a determination as to whether the child is currently at risk, the court can consider prior conduct of the offending parent. (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216; *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.) Further, the Legislature has declared in section 300.2 that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment."

## C. *The Jurisdiction Findings Were Supported by Substantial Evidence*

Mother contends there was insufficient evidence to support the juvenile court's jurisdiction findings given Mother's denial of drug use (except for prior marijuana use), the denial by Father J. and Father S. of ever seeing Mother use drugs,[9] Agustin being healthy at birth and all three children doing well at the time of the jurisdiction hearing without any signs of abuse. Mother attempts to blame the positive drug tests at Agustin's birth on factors other than her drug use and her missed drug tests on the fact her letter had not come up on the recording.

We recently addressed the risk posed to children from a mother and her baby testing positive for controlled substances at the time of the baby's birth in *In re Christopher R.*, *supra*, 225 Cal.App.4th 1210. There, the mother and her newborn baby tested positive for cocaine, and the baby also tested positive for amphetamine and

---

[9] Five year-old R.J. and the maternal grandmother also denied ever seeing Mother use drugs.

10

methamphetamine. The mother admitted using cocaine in the past but denied using it while she was pregnant. The mother later admitted she had picked up cocaine for someone else and tasted it to confirm that it was cocaine. (*Id*. at pp. 1212-1213.) The mother conceded that jurisdiction was proper as to the baby but contended it was insufficient to support jurisdiction findings as to her three older children, then aged three, six and seven. (*Id*. at pp. 1212, 1215.) The baby was born with respiratory issues, although she had no withdrawal symptoms and no ongoing health issues once she left the hospital; the three siblings appeared healthy and had no visible signs of abuse. (*Id*. at p. 1213.)

In upholding the juvenile court's jurisdiction findings, we found that the fact that the mother used cocaine while she was pregnant "unquestionably endanger[ed] the health and safety of her unborn child." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217.) We held that the juvenile court's finding that the mother endangered her four children's health and safety was supported by mother's use of cocaine while she was pregnant, her past drug use, her initial false denial of drug use, a missed drug test, and her failure to enroll in a substance abuse program. (*Id*. at p. 1217.) We found that the mother's one missed drug test was "properly considered the equivalent of a positive test result . . . ." (*Ibid*., fn. omitted.)

We also addressed the age of the children, holding that "because the children were six years old or younger at the time of the jurisdiction hearing—children of 'tender years' . . .—'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.' [Citations.] [The mother] did not adequately rebut that evidence. Indeed, her use of cocaine during the last months of her pregnancy confirmed her poor judgment and willingness to endanger her children's safety due to substance abuse. Thus, the decision to remove the children from her care and custody was supported by substantial evidence." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219; see also *In re Rocco M.*, *supra*, 1 Cal.App.4th at pp. 824, 825 [exercise of jurisdiction proper over "children of such tender years that the absence of adequate supervision and care poses an inherent risk to

11

their physical health and safety," but finding 11-year-old Rocco old enough to avoid physical dangers].)

Here, as in *Christopher R.*, Mother and Agustin tested positive for amphetamines and methamphetamines when Agustin was born. Mother denied any drug use during her pregnancy, and her family members denied seeing her use drugs. However, Mother's efforts to blame her positive drug tests on poisoning at a funeral or taking of acetaminophen are not persuasive.[10] More importantly, after denying any drug use and stating she would do whatever she needed to do to get her children back, Mother missed two random drug tests and failed to enroll in a substance abuse program.

The juvenile court did not believe Mother's explanation that her number was not called for random testing, instead finding that her number did come up and the court therefore had no proof "that she's clean and sober." Mother also provided no explanation as to why she failed to enroll in a substance abuse program. In other words, Mother failed to rebut the evidence of substance abuse and "'prima facie evidence of [her] inability . . . to provide regular care resulting in a substantial risk of harm'" to her young children. (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.)

Mother relies on cases in which the courts found that there was not sufficient evidence of current risk of harm to the children as a result of a parent's drug use, citing to *In re David M.* (2005) 134 Cal.App.4th 822 and *In re Destiny S.* (2012) 210 Cal.App.4th 999.[11] Both are distinguishable.

---

[10]     As noted above, the laboratory confirmed that even high doses of acetaminophen cannot cause a positive test for amphetamine. Likewise, the photograph of the acetaminophen bottle does not show that it came from Mexico; the label does not list a country of origin and the writing on the label is in English.

[11]     Mother also relies on *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453, for its holding that the "use of medical marijuana, *without more*, cannot support a jurisdiction[al] finding . . . ." The use of marijuana, however, is different from the facts here involving abuse of a controlled substance, methamphetamine, and its direct impact on Agustin, who also tested positive for methamphetamine.

In *In re David M.*, *supra*, 134 Cal.App.4th 822, although there was evidence that the mother used marijuana at least once while pregnant, her baby tested negative for drugs at birth and the mother tested negative for drugs 18 times over a four and one-half month period between the detention hearing and the jurisdiction hearing.[12] (*Id*. at pp. 829, 830.)

In *In re Destiny S.*, *supra*, 210 Cal.App.4th 999, the mother tested positive for marijuana and methamphetamine even though she said she had stopped using methamphetamine a year before. (*Id*. at p. 1001.) The court reversed the jurisdiction order, however, in light of evidence that by the time of the jurisdiction hearing, the mother had tested negative for marijuana and methamphetamine for three months and the evidence showed that the mother was not neglecting Destiny but, to the contrary, Destiny's room was "neat and clean," she attended school regularly, had no behavioral or discipline issues, and wanted to return to her mother. (*Id*. at p. 1004.) In addition, Destiny was 11 years old and "'old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life.'" (*Ibid*.)

Mother also relies on *In re Drake M*. (2012) 211 Cal.App.4th 754, 766, in which Division Three of this district held "that a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR."[13]

---

[12]     The mother in *David M*. did have missed drug tests but, unlike here, the court found the missed tests were excused. (*In re David M.*, *supra*, 134 Cal.App.4th at p. 830.)

[13]     The reference to the "DSM-IV-TR" is to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000). (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 765.) The court in *Drake M*. set forth the full definition of "substance abuse" in the DSM-IV-TR to include "recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home [including] . . . []neglect of children or household[]." (*Id*. at p. 766.)

While this court has found the *Drake M.* formulation "as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)," in *Christopher R.* we were "unwilling to accept [the mother's] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR categories can be found to be a current substance abuser." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218.)

Moreover, in *Christopher R.*, we found that the mother's prior repeated use of cocaine and her ingestion of cocaine while pregnant constituted recurrent substance abuse satisfying the second prong of *Drake M.* (*In re Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1218-1219.) Similarly, in this case, Mother's use of methamphetamine during pregnancy, as shown by the positive drug tests for Mother and Agustin, her denial of use of methamphetamine, combined with two missed drug tests that we treat as positive tests, and Mother's failure to attend a drug treatment program, demonstrated that she had a "current substance abuse problem" as defined in the DSM-IV-TR. In addition, all three children were at the "tender years" of five or younger. We conclude there was substantial evidence to support the jurisdiction finding.

**D. *The Disposition Order Removing the Children from Mother Was Supported by Substantial Evidence***

Mother contends that the juvenile court's disposition order was not supported by substantial evidence because the children could have been safe with her with the provision of services and supervision. Section 361, subdivision (c)(1), provides that a child "shall not be taken from the physical custody of [a parent] . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] [that] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."

14

"This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child [under section 300]. [Citations.] 'The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children.' [Citations.] 'Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.' [Citation.] [¶] At the same time, jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. [Citations.]" (*In re A.E.* (2014) 228 Cal.App.4th 820, 825-826.)

As Mother correctly notes, section 361, subdivision (c), "embodies 'an effort to shift the emphasis of the child dependency laws to maintaining children in their natural parent[s'] homes where it was safe to do so.' [Citations.]" (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288; see also *In re Henry V.* (2004) 119 Cal.App.4th 522, 529 [noting "constitutionally protected rights of parents to the care, custody and management of the children."].)

However, Mother's reliance on *In re Jasmine G.* and *In re Henry V.* is misplaced. In *Jasmine G.*, the court found no support for removal of the daughter from her mother based on one instance of slapping the daughter and removal of a nose stud Jasmine acquired in foster care, especially in light of mother's remorse over use of corporal punishment. (*In re Jasmine G.*, *supra*, 82 Cal.App.4th at pp. 288-291.) In *Henry V.*, the court found that there was "ample evidence" that appropriate services could have allowed Henry to remain in his family home where there was a single occurrence of physical abuse. (*In re Henry V.*, *supra*, 119 Cal.App.4th at pp. 529-530.)

In *Christopher R.*, we found that the decision to remove the children from the care and custody of the mother was supported by substantial evidence based on the mother's use of cocaine during the last months of her pregnancy, which "confirmed her poor judgment and willingness to endanger her children's safety due to substance abuse." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.) In this case, as we discuss above,

Mother likewise endangered her children's safety by abusing controlled substances, as evidenced by the fact that both Mother and Agustin tested positive for amphetamines and methamphetamines when Agustin was born.

Mother argues that she "could have continued to test in order to avoid removing her from the home." This argument ignores the fact that after the detention hearing, Mother missed two drug tests and failed to enroll in a drug treatment program. The juvenile court allowed Mother to live in the family home with Father S., M.S. and Agustin after the detention hearing conditioned on her participation in a drug counseling program and weekly random drug and alcohol testing. Only after Mother missed two drug tests and the CSW received confirmation that Mother and Agustin had tested positive for methamphetamine were the two younger children removed from her physical custody.

For the same reasons we discuss with respect to the jurisdiction findings, we find substantial evidence supports removal of the children from Mother.

**E.** *The Court Did Not Abuse Its Discretion in Entering a Custody Order Granting Sole Physical Custody of R.J. to Father J. and Terminating Jurisdiction*

Mother contends that the juvenile court erred in granting Father J. sole physical custody of R.J., with only supervised visitation for Mother, and terminating jurisdiction. We find the court did not abuse its discretion.

First, Mother argues that the juvenile court erred in applying section 361.2 to remove R.J. from Mother's physical custody. Section 361.2, subdivision (a), provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. . . ."

16

Mother argues that Father J. was not a "noncustodial" parent because he and Mother had joint custody of R.J. and had him on alternating weeks. Assuming Mother is correct (but see *In re Maya L.* (2014) 232 Cal.App.4th 81, 97, fn. 3 [custodial parent is one "'who had physical custody of the child at the time of the events that gave rise to the petition'"], the juvenile court still properly placed R.J. with Father J. pursuant to section 361, subdivision (c)(1)(B), which provides that when the court orders a child removed from a parent's custody, it may "[a]llow[] a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."[14]

As we discuss above, substantial evidence supports the juvenile court removing the children from Mother's care. Further, where there is a family law order in place, section 362.4 permits the juvenile court to issue an order placing a child with the nonoffending parent, granting the offending parent supervised visitation, and terminating jurisdiction.[15] (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712-713; see also *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) Upon a change of circumstances, the offending parent may seek a change of custody in the family law court. (*In re Jennifer R.*, *supra*, at p. 714; see also *In re A.C.* (2011) 197 Cal.App.4th 796, 799.)

"We . . . review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion [citation] and may not disturb the order unless the court "'"exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination

---

[14]    The citation of the wrong code section by the juvenile court at the hearing is harmless error where, as here, application of the correct code section warrants the same ruling. (See *In re Maya L.*, *supra*, 232 Cal.App.4th at p. 101.)

[15]    Section 362.4 provides that "[w]hen the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue a protective order as provided for in Section 213.5 or as defined in Section 6218 of the Family Code, and an order determining the custody of, or visitation with, the child."

17

[citations].'"" [Citations.]" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

We find no abuse of discretion in the juvenile court's decision to terminate dependency jurisdiction as to R.J. and to issue a custody order granting Father J. sole physical custody of R.J., with supervised visitation by Mother. As we discuss above, there was substantial evidence that R.J. could not safely be left in Mother's custody, and DCFS determined that Father J. could provide a safe and appropriate home for R.J. (See *In re Maya L.*, *supra*, 232 Cal.App.4th at p. 103.)

In addition, the juvenile court specified that it was granting Mother supervised visitation because she had failed to make substantial progress regarding the court-ordered drug program with random drug testing. Under the circumstances, the court did not abuse its discretion. (See *In re Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1220-1221.)

## DISPOSITION

The order is affirmed.

FEUER, J.[*]

We concur:

PERLUSS, P. J.                    ZELON, J.

---

[*]       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.